12 CIV 2470

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **MICHELLE GERMAN, Individually and on Behalf of All Others Similarly Situated,**<br><br>               **Plaintiff,**<br><br>-against-<br><br>**DELOITTE LLP, DELOITTE & TOUCHE LLP, DELOITTE SERVICES LP and DELOITTE CONSULTING LLP, Jointly and Severally,**<br><br>               **Defendants.** | **Civ. Action No. _____**<br><br>**CLASS & COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

RECEIVE
APR 2 2012
U.S.D.C. S.D. N.Y.
CASHIERS

## NATURE OF THE ACTION

1.      Plaintiff was an information technology support technician ("IT Support Technician") and trainer for Defendants (collectively "Deloitte") in their offices in New York County, New York. Plaintiff brings this action to recover unpaid overtime wages owed to her pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), § 650 *et seq.* Plaintiff brings her FLSA claims on behalf of herself and all other similarly situated employees of Defendants nationwide, and her NYLL claims on behalf of herself and a Federal Rule of Civil Procedure 23 class of IT Support Technicians working in New York.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b).

3.    Venue is proper in this district pursuant to 28 U.S.C. § 1391.

4.    This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

5.    Plaintiff Michelle German ("German" or "Plaintiff") was, at all relevant times, an adult individual residing in Bergen County, New Jersey. Throughout the relevant time period, German worked for Defendants in their corporate offices located in New York County, New York. German consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b) and her written consent form is attached hereto and incorporated by reference.

6.    Upon information and belief, Defendant Deloitte LLP is a Delaware corporation licensed to conduct business in New York, with a global corporate headquarters at 1633 Broadway, New York, NY 10019.

7.    Upon information and belief, Defendant Deloitte & Touche LLP is the former name of Deloitte LLP. Upon information and belief, through in or around 2008, Defendant Deloitte & Touche LLP was a Delaware corporation licensed to conduct business in New York, with a corporate headquarters at 1633 Broadway, New York, NY 10019.

8.    Upon information and belief, Defendant Deloitte Services LP is a Delaware corporation headquartered at 4022 Sells Drive, Hermitage, TN 37076, licensed to conduct business in New York, with a corporate office at 2 World Financial Center, New York, NY 10281.

9.    Upon information and belief, Defendant Deloitte Consulting LLP is a Delaware corporation licensed to conduct business in New York, with a corporate headquarters at 1633 Broadway, New York, NY 10019.

2

## COLLECTIVE ACTION ALLEGATIONS

10.     Pursuant to 29 U.S.C. §§ 206, 207 and 216(b), Plaintiff brings her First Cause of Action as a collective action under the FLSA on behalf of all IT Support Technicians and/or other employees performing "level II" IT support (the "Collective Action Members" or the "Collective Action"), who are or were employed by any Defendant in the United States at any time since April 2, 2009 and through the entry of final judgment in this case (the "Collective Action Period").

11.     A collective action is appropriate in this circumstance because Plaintiff and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policies of failing to pay overtime and misclassifying their IT Technicians as "exempt". As a result of those policies, Plaintiff and the Collective Action Members did not receive the legally required overtime premium payments for all hours worked in excess of forty (40) per week.

## CLASS ALLEGATIONS – NEW YORK LABOR LAW

12.     Pursuant to the NYLL, Plaintiff brings her Second Cause of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all IT Support Technicians and/or other employees performing "level II" IT support (the "Class Members" or the "Class") who are or were employed by Defendants in New York at any time since April 2, 2006 through the entry of final judgment in this case (the "Class Period").

13.     The Class Members are so numerous that joinder of all members is impracticable.

14.     Although the precise number of such persons is unknown to Plaintiff, the facts on which the calculation of that number can be based are presently within the sole control of

3

Defendants.

15.     Upon information and belief, there are well in excess of forty (40) Class Members.

16.     There are questions of law and fact common to the claims of Plaintiff and the claims of the Class, including whether Defendants had a corporate policy of failing to pay overtime premiums when employees worked in excess of forty (40) hours per week; and/or corporate policy of misclassifying IT Support Technicians as exempt from overtime.

17.     Plaintiff's claims are typical of the Class Members' claims, and Plaintiff will fairly and adequately represent the Class.  There are no conflicts between Plaintiff and the Class Members and Plaintiff's counsel are experienced in handling class litigation.

18.     The Second Cause of Action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).  There are questions of law and fact common to the Class that predominate over any questions solely affecting individual Class Members, including but not limited to:

> a.  whether each Defendant was an employer of the Class Members within the meaning of the NYLL;
>
> b.  whether Defendants had a policy of failing to pay overtime for all hours worked in excess of forty (40) per week;
>
> c.  whether Defendants had a policy of misclassifying their IT Support Technicians as exempt from overtime.

19.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy—particularly in the context of this case where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against

4

corporate defendants.  The individual members of the class have no interest or capacity to bring separate actions; Plaintiff is unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

20.  At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

21.  Upon information and belief, at all relevant times, the Defendants had gross revenues in excess of $500,000.00.

22.  At all relevant times, Defendants employed and/or continue to employ Plaintiff and each Collective Action Member within the meaning of the FLSA, 29 U.S.C. § 203(d).

23.  At all relevant times, Defendants employed and/or continue to employ Plaintiff and each Class Member within the meaning of the NYLL, §§ 2 and 651.

24.  At all relevant times, Defendants have been in the professional services industry.   According to their website http://www.deloitte.com, Defendants employ approximately 182,000 people in more than 150 countries throughout the world delivering services in audit, tax, consulting and financial advisory.

25.  Plaintiff German was employed by Defendants from approximately February 10, 1997 through January 31, 2012 (the "German Employment Period").

26.  German was initially hired as a help-desk analyst whereby she performed "level I" IT support in Defendants' office at the World Financial Center in New York City.  In or around 1998, German was transferred to Defendants' office in Parsippany, New Jersey where

5

she worked as a help-desk analyst until in or around 1999. German returned to Defendants'
offices in New York in 1999, at which time she became an IT Support Technician, providing
"level II" walk-up and/or desktop support. German was then promoted to IT Support
Technician Supervisor, in or around 2002. As a Supervisor, German oversaw the work of
approximately 7 IT Support Technicians in Defendants' offices at 1633 Broadway, New York,
NY 10019. Approximately one year later, in or around 2003, German left her position as a
Supervisor and returned to being an IT Support Technician in Defendants' offices at 2 World
Financial Center. German remained in her position as an IT Support Technician performing
"level II" IT support until her separation from Defendants in January 2012.[1] Throughout the
German Employment Period, German also participated in training Defendants' new hires
regarding, among other things, Deloitte's software, specifications and technology
requirements.

27.    Throughout the German Employment Period, German typically worked at least
five days per week, between at least eight (8) and twelve (12) hours per day, for a total of
between forty (40) and sixty (60) hours per week, and sometimes much more. Initially,
German was typically scheduled to work from 8:00am to 5:00pm or from 9:00am to 6:00pm,
but would often times work well beyond her scheduled shifts to complete a computer support
task. In or around 2009, Defendants implemented three separate shifts, which were, upon
information and belief, designed to provide relief to the IT Support Technicians who were
working very long hours providing IT support for the entire support day.    IT Support
Technicians including Plaintiff German and the members of the Class would thereafter rotate
every three months between the following three schedules: 9:00am to 6:00pm, 4:00pm to

---

[1] Plaintiff German was on disability leave and unable to work for Defendants from approximately January 31,
2011 until she was terminated on January 31, 2012.

12:00am and 12:00pm to 9:00pm.  Notwithstanding the fact that German and Defendants' other IT Support Technicians were scheduled to work these shifts, they frequently worked well in excess of their scheduled shifts.

28.     Throughout the German Employment Period, German was required to record her hours into Defendants' "SAP" system, which would track the time that German provided support for a particular computer.  German would enter her hours spent performing IT support for Defendants' clients and would print out her time sheet each week to be approved by her manager.     Regardless of the number of hours German spent performing IT support or conducting trainings, as long as it was more than 40 hours German would only received her weekly salary.

29.     IT Support Technicians, including Plaintiff German and the members of the Class were required to work at least 40 hours each week to earn their salary.  In the event that an IT Support Technician did not work at least 40 hours in a week, Defendants required the IT Support Technician to use personal time to bring their weekly hours to the 40 hour minimum.  For example, if an IT Support Technician had to miss a day of work, they would use 8 hours of accrued "personal time" to ensure that their weekly hours would equal to 40 for the week's paycheck.

30.     Throughout the German Employment Period, German was paid on a salary basis based on a 40 hour work week.  When German began working for Defendants in 1997, she earned approximately $44,000 per year.  After receiving several raises throughout her time working for Defendants, German earned approximately $74,400 in her final full-year of employment with Defendants. Despite the fact that she typically worked in excess of 40 hours per week, German never earned wages or overtime premium compensation for the hours

worked in excess of 40 hours in a week. Defendants' failure to pay German overtime premiums for work performed in excess of 40 hours in a week is a corporate policy of Defendants to classify their IT Support Technicians as "exempt" notwithstanding the fact that these employees primarily perform "non-exempt" work for Defendants.

31.     Throughout German's time as an IT Support Technician and trainer, German performed mainly break/fix work on the Defendants' clients' computers. Internally, the IT Support Technicians performed "level II" IT support, based on a three level support system. "Level I" IT support, refers to Defendants' help-desk analysts, who in or around 2006, were, upon information and belief, moved or outsourced to India. As a result, Defendants' IT Support Technicians provide the first level of in-person support to Defendants' clients in Defendants' offices in the United States. Defendants' "level II" IT support is divided into "walk-up support" for laptops and "desktop support" for desktop computers. Defendants' IT Support Technicians including Plaintiff German and the members of the Class rotated between walk-up and desktop support, performing the same break/fix duties for laptops, desktops and printers. Defendants' "level III" IT support refers to the higher-level computer workers, including advanced computer technicians and computer engineers.

32.     Throughout German's time as an IT Support Technician, German performed her IT support tasks pursuant to preexisting formulas, methodologies and scripts which were imbedded in Defendants' systems and were created by "level III" IT support professionals. German's primary responsibilities as an IT Support Technician were "non-exempt" duties including, among other things: replacing hardware including keyboards, mouse and monitors; adding software; troubleshooting programs; backing up programs and client information; deployment and computer backup imaging. When German and Defendants' other IT Support

8

Technicians were presented with a computer-related issue, they first had to create a ticket for the computer so that it can be tracked by Defendants' systems. Depending on what type of problem the ticket was created to address, the ticket would list certain possibilities for the IT Support Technician to test out in order to resolve the problem. If the problem was unable to be resolved at that time, the IT Support Technician was required to research the problem in Defendants' database which contained solutions to common computer-related problems. If the problem was still not resolved, the IT Support Technician was required to speak with their supervisor for additional guidance regarding possible search terms or areas of the database that may provide the solution. In the event that the computer problem was still not fixed, the IT Support Technician would report this to their supervisor who would direct the IT Support Technician to send the ticket to a higher level of escalation, "level III." Throughout this entire process, the IT Support Technician is unable to exercise independent judgment, but is instead required to research certain computer troubleshooting possibilities in Defendants' database of solutions or to consult with their supervisor for guidance.

33. Throughout the German Employment Period, German also conducted certain computer-related trainings for Defendants' new hires. German and Defendants' other trainers were required to train Defendants' new hires regarding Deloitte's software, computer specifications and requirements, pursuant to a preexisting training skit. The training skit was developed by the head trainers and it instructed German and the other trainers as to what to say and how to conduct the new hire trainings. Defendants' employees at all levels of IT support perform trainings for Defendants' new hires.

34. German and Defendants' other trainers performed trainings outside of their regularly scheduled shifts, including on nights and weekends, without receiving any extra

9

compensation or overtime premiums when the trainings were performed during weeks where Defendants' trainers worked more than 40 hours.

35.     Despite the fact that she regularly worked more than forty (40) hours per week through the German Employment Period, German was never paid at overtime rates for all hours worked beyond forty (40).

36.     The work performed by German was performed in the normal course of Defendants' business and was integrated into the business of Defendants.

37.     The work performed by German required little skill and no capital investment.

38.     The work performed by German did not require the exercise of independent business judgment.

39.     Plaintiff and Defendants' other IT Support Technicians' primary job duties did not consist of the application of systems analysis techniques and procedures, including consulting with users, to determines hardware, software or system functional specifications.

40.     Plaintiff and Defendants' other IT Support Technicians' primary job duties did not consist of the design, development, documentation, analysis, creation, testing or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications.

41.     Plaintiff and Defendants' other IT Support Technicians' primary job duties did not consist of the design, documentation, testing, creation or modification of computer programs related to machine operating systems or a combination of the duties set forth in Paragraphs 39 through 41.

42.     Defendants have simultaneously employed other individuals like Plaintiff during the Class Period and Collective Action Period and continuing until today, to perform

10

work as IT Support Technicians and other employees providing "level II" IT support.  As stated, the exact number of such individuals is presently unknown but within the sole knowledge of Defendants and can be ascertained through appropriate discovery, and is believed to be in excess of 40.

43.     Like Plaintiff, Defendants' other employees were required to work in excess of forty (40) hours per week, yet Defendants failed to pay these other employees overtime compensation for hours worked in excess of forty (40) hours per week.  This refusal to pay overtime compensation for hours worked in excess of forty (40) in a given week was a corporate policy of Defendants that applied to all of Defendants' other IT Support Technicians and other employees providing "level II" IT support.

44.     Upon information and belief, throughout the Collective Action Period and the Class Period, Defendants failed to maintain accurate and sufficient time records reflecting the hours worked and payments received by Plaintiff and Defendants' other employees.

## FIRST CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT – UNPAID OVERTIME

45.     Plaintiff, on behalf of herself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

46.     By failing to pay overtime at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

47.     Defendants also violated the FLSA overtime rights of the Plaintiff and the

11

members of the Collective Action because they did not perform duties necessary for the executive, administrative or computer-worker exemptions to apply.

48.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

49.     Defendants' failure to pay overtime caused Plaintiff and the Class Members to suffer loss of wages and interest thereon.  Plaintiff and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

### SECOND CAUSE OF ACTION
### NEW YORK LABOR LAW – UNPAID OVERTIME

50.     Plaintiff, on behalf of herself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

51.     Defendants willfully violated the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of forty (40) per week, in violation of the NYLL and regulations promulgated thereunder.

52.     Defendants also violated the NYLL overtime rights of the Class Members because they did not perform duties necessary for the executive, administrative or computer-worker exemptions to apply.

53.     Defendants' failure to pay overtime caused Plaintiff and the Class Members to suffer loss of wages and interest thereon.  Plaintiff and the Class Members are entitled to

12

recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) et al. and 196-d.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff, on behalf of herself and all other similarly situated Collective Action Members and Class Members, respectfully requests that this Court grant the following relief:

 a. Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative Collective Action Members, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiff and her counsel to represent the Collective Action Members;

 b. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(3) on behalf of the Class Members, appointing Plaintiff and her counsel to represent the Class, and ordering appropriate monetary, equitable and injunctive relief to remedy Defendants' violations of the NYLL;

 c. An order tolling the relevant statutes of limitations;

 d. An order declaring that Defendants violated the FLSA;

 e. An order declaring that Defendants' violations of the FLSA were willful;

 f. An order declaring that Defendants violated the NYLL;

 g. An award of overtime compensation due under the FLSA and NYLL;

 h. An award of liquidated and/or punitive damages as a result of the Defendants'

willful failure to pay overtime compensation pursuant to 29 U.S.C. § 216 and the NYLL;

i.   An injunction against the Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

j.   An award of prejudgment and post-judgment interest;

k.   An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

l.   Such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated:  New York, New York
         April 2, 2012

PELTON & ASSOCIATES PC

By: _____

Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
Attorney for Plaintiffs, Individually, and
on Behalf of All Other Persons Similarly Situated
111 Broadway, Suite 901
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

March 2, 2012
Page 7

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest Deloitte Services LP and/or its owners, officers, subsidiaries, contractors, managers, shareholders and/or affiliates, if applicable, based on their failure to pay overtime wages as required under state and/or federal law. I authorize the filing of this consent in the action(s) challenging such conduct. I authorize being named as the representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

_Michelle German_ _3/5/2012_      _Michelle German_
Signature          Date                Printed Name

ALL my Rights are reSerued ( michelle German )
3/5/2012